UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| HAILEE R. DESOUZA, | |
|---|---|
| Plaintiff, | No. 3:15-CV-01668 (MPS) |
| v. | |
| PARK WEST APARTMENTS, INC. et al.<br>Defendant. | |

**RULING ON MOTION TO STRIKE**

**I.    Introduction**

Hailee R. DeSouza ("DeSouza") brings this suit against his landlord, Park West Apartments, Inc. ("Park West"), and Community Builders, Inc.,[1] the nonprofit corporation that controls it. DeSouza claims chiefly that Park West discriminated and retaliated against him by attempting to evict him and by failing to renew his lease. At issue here is Park West's motion to strike an exhibit submitted by DeSouza as an attachment to his memorandum opposing Park West's motion to consolidate. Park West asserts that the exhibit is protected by the attorney-client privilege and was provided to DeSouza inadvertently. (*See* ECF No. 89). The exhibit in question (ECF No. 88-2 at 2-3) constitutes an email from Park West's former supervisor, Kim

---

[1] Since Community Builders, Inc., and Park West are part of the same entity, I refer to both as Park West throughout this ruling for convenience.

1

Doughtie, to an attorney. For the reasons that follow, Park West's motion to strike is hereby DENIED.

**II.     Background**

DeSouza filed his opposition to the defendants' motion to consolidate (ECF No. 88), along with the exhibit at issue (ECF No. 88-2 at 2-3), on April 12, 2017. The exhibit at issue consists of an email exchange between Kim Doughtie and Neil Paul, an outside attorney for defendants. According to DeSouza, he obtained the document on March 24, 2017, while reviewing his "HUD Resident Tenant file." (ECF No. 92 at 1).

The email exchange begins with an email from Ms. Doughtie stating as follows:

> This letter was hand delivered about 15 minutes ago by Desouza himself. I am hoping you can get this man evicted. I consider his words a hate crime which is against the law. It is also untrue slander. I have never had an accident let alone a hit and run. Being a lawyer please tell me how to stop this person????

(ECF No. 88-2 at 3). The "letter" referred to in the email has not been made available to the Court. Neil Paul eventually sent a response noting various items that Doughtie was to bring to a future meeting. (*Id.* at 2). He also noted that he had "received the same stack of tissues that [Doughtie] just received," that he would "start [his] fire on Friday evening with them," and that he had "the same issue with suing a Park West tenant as [he] did last time." (*Id.*).

The defendants filed their motion to strike (*see* ECF No. 89-1) the email exchange in question over a month after DeSouza filed it—on May 17, 2017. In their motion to strike, the defendants conceded that they produced the privileged document to the plaintiff along with the rest of his tenant file. (*Id.* at 2).[2] According to the defendants, DeSouza went to the office at Park West and demanded to see his tenant file. (*Id.* at 3). Roman Castro, Community Manager

---

[2] I recount the facts from the defendants' motion given that, even accepting them as true, I would still deny the motion to strike.

2

of Park West Apartments, had directed office staff to have DeSouza tab any documents he wanted copied so that Mr. Castro could review them prior to their release. (*Id.* at 4). Mr. Castro stated in his affidavit that he was not in the office on the day DeSouza arrived to review his tenant file. (ECF No. 89-2 at 1). The defendants aver that the Park West staff was so overcome by DeSouza's aggressive behavior, however, that they provided him with his entire file without tabbing the documents for Mr. Castro's review. (ECF No. 89 at 4). Had Mr. Castro reviewed the file, according to the defendants, he would have removed the email exchange. (*Id.*).

In November of 2017, I issued an order addressing various disputes between the parties, including the dispute over the exhibit in question. (*See* ECF No. 120). In that order, I provided DeSouza with seven days to file any policies promulgated by the Department of Housing and Urban Development ("HUD") "that require the landlords of HUD-subsidized housing to make tenants' files available to tenants" and to "make any arguments with respect to whether any attorney-client privilege that might apply to ECF No. [88-2] has been waived. . . ." (*Id.* at 2). I granted the defendants seven days following any such filing to file a response. (*Id.*). DeSouza filed a timely response on the docket listing various HUD regulations that he averred granted him, as a tenant, the right to access his tenant file. (*See* ECF No. 124). In response, the defendants filed a notice stating only that the defendants "refer this Court to Docket Entry Nos. 89 and 89-1, which address the waiver of privilege issue currently before this court." (ECF No. 127).

III. Discussion

The defendants argue that the Court should strike the exhibit produced to DeSouza because it is protected by the attorney-client privilege and was disclosed to DeSouza inadvertently. (*See* ECF No. 89-1 at 2). Given that the exhibit was located in a tenant file

of Park West Apartments, had directed office staff to have DeSouza tab any documents he wanted copied so that Mr. Castro could review them prior to their release. (*Id.* at 4). Mr. Castro stated in his affidavit that he was not in the office on the day DeSouza arrived to review his tenant file. (ECF No. 89-2 at 1). The defendants aver that the Park West staff was so overcome by DeSouza's aggressive behavior, however, that they provided him with his entire file without tabbing the documents for Mr. Castro's review. (ECF No. 89 at 4). Had Mr. Castro reviewed the file, according to the defendants, he would have removed the email exchange. (*Id.*).

In November of 2017, I issued an order addressing various disputes between the parties, including the dispute over the exhibit in question. (*See* ECF No. 120). In that order, I provided DeSouza with seven days to file any policies promulgated by the Department of Housing and Urban Development ("HUD") "that require the landlords of HUD-subsidized housing to make tenants' files available to tenants" and to "make any arguments with respect to whether any attorney-client privilege that might apply to ECF No. [88-2] has been waived. . . ." (*Id.* at 2). I granted the defendants seven days following any such filing to file a response. (*Id.*). DeSouza filed a timely response on the docket listing various HUD regulations that he averred granted him, as a tenant, the right to access his tenant file. (*See* ECF No. 124). In response, the defendants filed a notice stating only that the defendants "refer this Court to Docket Entry Nos. 89 and 89-1, which address the waiver of privilege issue currently before this court." (ECF No. 127).

III. Discussion

The defendants argue that the Court should strike the exhibit produced to DeSouza because it is protected by the attorney-client privilege and was disclosed to DeSouza inadvertently. (*See* ECF No. 89-1 at 2). Given that the exhibit was located in a tenant file

accessible to DeSouza prior to its disclosure,[3] there is some doubt about whether it was protected by the attorney-client privilege in the first place. *See In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) ("[a] party invoking the attorney-client privilege must show a communication between client and counsel that was intended to be and was in fact kept confidential" (numerations omitted)). Even assuming that the exhibit was protected by the privilege, however, I find that the defendants have waived such protection.

Under Fed. R. Evid. 502(b), the disclosure of a privileged document "does not operate as a waiver," if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." *See also In re Natural Gas Commodity Litigation*, 229 F.R.D. 82, 86 (S.D.N.Y. 2005) ("To determine whether an inadvertent disclosure waived the privilege, courts in this Circuit balance four factors: '[1] the reasonableness of the precautions to prevent inadvertent disclosure, [2] the time taken to rectify the error, [3] the scope of the discovery and the extent of the disclosure . . . [and 4] overreaching [sic] issues of fairness.'" (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985)).[4] While the defendants

---

[3] As DeSouza noted in his response to the Court's ECF No. 120 order, (*see* ECF No. 124-1 at 2), HUD regulations provide a HUD tenant with the right to review his or her file. *See* U.S. Dep't Hous. & Urban Dev., HUD Handbook 4350.3: Occupancy Requirements of Subsidized Multifamily Housing Programs § 5–23.C (Nov. 2013) ("HUD Handbook"), available at http://portal.hud.gov/hudportal/documents/huddoc?id=43503HSGH.pdf ("The tenant's file should be available for review by the tenant upon request or by a third party who provides signed authorization for access from the tenant."). Further, tenant files are subject to inspection by HUD to ensure compliance with Section 8 requirements. *See, e.g.*, "Tenant File Review Checklist Instructions," https://www.hud.gov/sites/documents/DOC_10774.pdf.

[4] Courts in the Second Circuit have used both the factors from Fed. R. Evid. 502(b) and *Lois Sportswear* to determine whether a party has waived the attorney-client privilege through inadvertent disclosure. *See, e.g.*, *Expert Choice, Inc. v. Gartner, Inc.*, No. 3:03 CV 02234 CFDTPS, 2007 WL 951662, at *3 (D. Conn. Mar. 27, 2007) (employing the *Lois Sportswear*

have a strong case that the disclosure here was inadvertent, they have failed to demonstrate that they took reasonable steps to prevent disclosure or prompt steps to rectify the erroneous disclosure to DeSouza.

A court will generally consider precautions against inadvertent disclosure to be reasonable "if the procedure followed in maintaining the confidentiality of the document [is] not . . . so lax, careless, inadequate or indifferent to consequences as to constitute a waiver." *In re Nat. Gas Commodity Litig.*, 229 F.R.D. 82, 86 (S.D.N.Y. 2005) (quoting *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, 96 Civ. 7590, 1997 WL 736726 at *5 (S.D.N.Y. Nov.26, 1997) (quotations omitted)); *see also United States v. Rigas*, 281 F.Supp.2d 733, 739 (S.D.N.Y.2003) ("[T]he reasonableness of a party's actions to protect privileged information should be measured in light of the risks foreseeable to that party at the time the precautions were taken. The mere fact of an accidental disclosure does not automatically render the precautionary measures unreasonable at the time they were performed." (emphasis omitted)). The defendant's precautions against disclosure do not meet this standard. While a lower level employee's erroneous disclosure is not necessarily evidence of an unreasonable precaution against

---

factors in determining whether attorney-client privilege had been waived); *Shakima O. v. Westchester Cty.*, No. 12 CV 9468 VB, 2014 WL 521608, at *6 (S.D.N.Y. Feb. 10, 2014) (applying the Rule 502 factors in determining whether attorney-client privilege had been waived); *Jacob v. Duane Reade, Inc.*, No. 11 CIV. 0160 JMO THK, 2012 WL 651536, at *4 (S.D.N.Y. Feb. 28, 2012) (employing both the *Lois Sportswear* and Rule 502 factors in determining whether privilege had been waived). Also, the Advisory Committee notes to Rule 502 cite favorably the *Lois Sportswear* factors. *See id.* ("Cases such as [*Lois Sportswear*] . . . set out a multi-factor test for determining whether inadvertent disclosure is a waiver. The stated factors (none of which is dispositive) are the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness. [Rule 502] does not explicitly codify that test, because it is really a set of non-determinative guidelines that vary from case to case. The rule is flexible enough to accommodate any of those listed factors."). As such, I cite case law concerning both the Rule 502 and *Lois Sportswear* factors in applying the Rule 502 factors.

disclosure, *see Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96CIV.7590(DAB)(JCF), 1997 WL 736726, at *5 (S.D.N.Y. Nov. 26, 1997) (inadvertent disclosure caused by paralegal's mistake despite supervising counsel's clear instruction did not result from inadequate precaution), the defendants here did not merely let slip an attorney-client communication during the discovery process. Rather, apparently before the litigation began, they placed the communication in a public file to which DeSouza had a right of access. *See United States v. Gangi*, 1 F. Supp. 2d 256, 265 (S.D.N.Y. 1998) (government waived attorney-client privilege by filing document as part of public court file). Further, even after the litigation was filed, the safeguards that the defendants claim to have put in place were designed only to prevent DeSouza from *copying* the exhibit; they did nothing to prevent him from reading the document. Taken together, the defendants' actions were not "reasonable steps to prevent disclosure." Fed. R. Evid. 502(b). Thus, the reasonable precaution factor cuts in favor of a finding of waiver.

The time taken to rectify the error also weighs against the defendants. As a general principle, "[t]he period after the producing party realizes that privileged information has been disclosed is the relevant period for measuring whether the privilege has been waived." *Aramony v. United Way of America*, 969 F. Supp. 226, 237 (S.D.N.Y. 1997). *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09 CIV. 9783 RWS, 2013 WL 2322678, at *7 (S.D.N.Y. May 21, 2013). Here, the defendants apparently did not realize that the information had been improperly provided to DeSouza until he filed a motion incorporating the exhibit about three weeks after he obtained the document. The defendants then waited over a month before filing the motion to strike. *Contrast Lloyds Bank PLC v. Republic of Ecuador*, No. 96 CIV. 1789 DC, 1997 WL 96591, at *5 (S.D.N.Y. Mar. 5, 1997) (no waiver where party asserted privilege promptly after

inadvertent disclosure). The defendants did not provide any explanation for this substantial delay. Thus, this factor also weighs in favor of a finding of waiver.

In light of the defendants' failure to take reasonable precautions to prevent the disclosure of the exhibit and their subsequent delay in addressing its disclosure, I conclude that they have waived any privilege that would otherwise have attached to it. I therefore deny the motion to strike.

## IV. Conclusion

For the reasons discussed above, the defendants' motion to strike (ECF No. 89) is hereby DENIED.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

January 30, 2018