# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| HAILEE R. DESOUZA,<br>　　Plaintiff,<br>v.<br>PARK WEST APARTMENTS, INC. et al.<br>　　Defendants. | No. 3:15-cv-01668 (MPS) |

## RULING ON MOTIONS FOR RECONSIDERATION

Hailee R. DeSouza ("DeSouza") brings this suit[1] against his landlord, Park West Apartments, Inc., and The Community Builders, Inc., the nonprofit corporation that controls it (collectively "Park West").[2] DeSouza chiefly claims that Park West racially discriminated and retaliated against him by repeatedly attempting to evict him. He also claims that Park West violated his privacy rights by informing other tenants of the eviction proceedings and that Park West's former property manager, Kim Doughtie, falsely accused him of sexually assaulting her daughter and granddaughter. Based upon these accusations, he set out claims against Park West for: (i) race discrimination and retaliation in violation of the Fair Housing Act ("FHA") (Counts 1, 2, and 3); (ii) violation of the First Amendment (Count 4); (iii) violation of the Fourth Amendment (Count 5); (iv) interference, coercion or intimidation in violation of 42 U.S.C. § 3617 of the FHA (Count 6); (v) discrimination and retaliation in violation of 42 U.S.C. § 1981 (Count 7); (vi) violation of the Privacy Rights Act of 1974, 5 U.S.C. § 552a ("Privacy Act")

---

[1] This case was consolidated with a similar case filed by DeSouza—DeSouza v. Community Builders, Inc., 3:17-CV-00016 (MPS), in May of 2017. (*See* ECF No. 90 (order granting Park West's motion for consolidation); ECF No. 91 (Notice of Consolidation).)

[2] Since Community Builders, Inc., and Park West are part of the same entity, I refer to the defendants collectively as Park West throughout this ruling for convenience.

1

(Count 8); and (vii) common law slander and intentional infliction of emotional distress for Ms. Doughtie's alleged false sexual assault allegation[3] (Count 9). (*See* ECF No. 100-2 at 17-19).

Park West moved for summary judgment on all counts. (ECF No. 128). I granted the motion in part, but denied it with respect to the portion of DeSouza's retaliation claims under the FHA concerning Park West's filing of an affidavit of noncompliance in March 2015 (Counts 1, 2, 3, 6). Now before me is Park West's motion for reconsideration (ECF No. 162), and what I construe as a motion for reconsideration filed by DeSouza (ECF No. 163; ECF No. 164). For the reasons that follow, Park West's motion for reconsideration is granted and DeSouza's motion is denied.

I. **Background**[4]

A. **Eviction Proceedings**

DeSouza is a tenant of Park West and has been for approximately thirteen years. In January 2014, he attained a position as a senior project engineer in Texas—he would remain in this position until April 2014. Given the change in his income upon attaining this position, DeSouza had to complete an interim recertification to retain his Section 8 subsidy. The parties disagreed regarding whether DeSouza complied with this requirement. While Park West contended that DeSouza failed to complete this process, DeSouza maintained that he had complied by reporting his new income. Park West subsequently issued DeSouza a Notice to Quit on April 22, 2014, for failing to complete the recertification process. On June 12, 2014, DeSouza received an eviction notice for failing to complete the recertification process in violation of his lease.

---

[3] DeSouza did not name Doughtie as a defendant in this action.

[4] I presume the parties' familiarity with the facts of this case and therefore only briefly describe the relevant background for this ruling.

2

The parties mediated the matter with a housing court mediator on August 29, 2014, resulting in the execution of a Stipulated Agreement ("Agreement") providing, among other things, that DeSouza agreed to complete the recertification process. (*See* ECF No. 130-8, Exhibit H, at 2 ("Stipulated Agreement").) The Agreement also provided that "[b]oth parties shall be respectful and courteous to one another." (*Id.*) The parties' subsequent meeting to complete the recertification process went poorly. During the meeting, Park West staff asked DeSouza several times whether he was recording them. He refused to answer. Park West staff subsequently asked DeSouza to leave. Park West then filed an affidavit of non-compliance with the Stipulated Agreement documenting the incident. A hearing was held in Connecticut Superior Court, but the judge never issued an order on the matter.

In December 2014, DeSouza was served with a notice of intent to remove subsidy based on information received by Park West demonstrating that he was making $69 per hour in a new job. Despite this notice, DeSouza refused to pay the market rent for his apartment. On February 26, 2015, as the parties' dispute over this matter was unfolding, Park West manager Kim Doughtie sent an email to Park West Attorney Neil Paul stating as follows:

> This letter was hand delivered about 15 minutes ago by Desouza himself. I am hoping you can get this man evicted. I consider his words a hate crime which [sic] is against the law. It is also untrue slander. I have never had an accident let alone a hit and run. Being a lawyer please tell me how to stop this person????

(ECF No. 88-2 at 3) The remainder of the email chain contained in the document at issue did not shed light upon the context for this email. A few weeks later, Park West filed a second affidavit of noncompliance with the Stipulated Agreement on March 11, 2015. In the affidavit, Park West avers that DeSouza's use of discourteous language directed toward itself and Doughtie violated the portion of the Stipulated Agreement requiring the parties to be courteous to one another. (See ECF No. 130-17 at 2, Exhibit Q, Affidavit of Noncompliance ("Second Affidavit of

Noncompliance").) Park West noted in the affidavit that DeSouza had used various epithets to refer to it and had, amongst other discourtesies, compared Ms. Doughtie to Charles Manson and Susan Smith, a woman who had drowned her two young children in South Carolina. (*See id.*) A Connecticut Superior Court judge subsequently held hearings on the matter and concluded that DeSouza had an obligation to pay market rent for his apartment for those months he was employed. The judge concluded that Park West had failed to prove any other infractions of the Stipulated Agreement by a preponderance of the evidence. DeSouza ultimately paid his arrearage to Park West in July 2015 and has continued to live in his apartment since that time.

### B. DeSouza's HUD Complaints

DeSouza filed various complaints with the Department of Housing and Urban Development ("HUD") during the events described above. On February 18, 2014, he filed a complaint with HUD offices in Washington, DC, and Boston, Massachusetts. The complaint recounted a variety of DeSouza's disputes with Park West staff, alleging among other things that Park West management had informed him that they wanted him to leave his apartment. DeSouza sent another copy of his HUD complaint to HUD's Washington and Boston offices on March 18, 2014. He mailed a document containing three questions concerning Park West's alleged malfeasance to various HUD offices on April 23, 2014. The parties disputed whether Park West had notice of the February and March complaints at the time they were filed. DeSouza filed four or five more complaints with HUD and various other parties between October 8, 2014, and October 11, 2014, averring that Park West had violated his right to privacy by informing other tenants about the eviction proceedings against him.

### C. Ruling on Park West's Motion for Summary Judgment

On June 14, 2018, I issued a ruling on Park West's motion for summary judgment. (ECF No. 160 ("SJ Ruling").) I granted Park West's motion with respect to the majority of DeSouza's claims but rejected it with respect "to the portion of DeSouza's retaliation claims under the FHA concerning Park West's filing of an affidavit of noncompliance in March of 2015 (Counts 1, 2, 3, 6). (*Id.* at 2.) I concluded that these latter claims survived due to the February 26, 2015 email from Ms. Doughty to Attorney Paul quoted above. (*Id.* at 27.) In particular, I noted that Doughtie's statement that she was "hoping that [Attorney Paul] can get [DeSouza] evicted" suggested "that she wished DeSouza to be evicted as a general matter rather than as a result of specific misconduct on his part." (*Id.* (internal quotation marks omitted).) I concluded that this email raised an inference of retaliation given that Park West filed a second affidavit of non-compliance with the Stipulated Agreement a few weeks after the email was sent. (*Id.* at 27, 30.) I concluded that "[w]hile the email does not mention DeSouza's filing or prior HUD complaints, it does, when viewed in the light most favorable to DeSouza, raise a genuine issue of material fact concerning whether Ms. Doughtie wanted DeSouza evicted at least in part on the basis of his prior HUD complaints." (*Id.* at 30 (internal citation omitted).)

On June 21, 2018, Park West filed a motion for reconsideration of the Court's order. (ECF No. 162.) A few days later, DeSouza filed a document entitled "Plaintiff, Appeal Motion for Consideration to Court Summary Judgment Ruling and Request Full Court Hearing [sic]." (ECF No. 163.) Although the document is styled as a "Response re . . . Motion for Reconsideration" on the docket, it is dated June 1, 2018, and makes no mention of Park West's motion for reconsideration.[5] (*Id.*) I will therefore treat it as a motion for reconsideration. A few days later, DeSouza filed a motion to amend his previous filing by adding additional exhibits.

---

[5] It is also worth noting that DeSouza filed an objection to Park West's motion for reconsideration on July 2, 2018. (ECF No. 167)

(ECF No. 164.) I granted the motion to amend on October 9, 2018. (ECF No. 169.) I address the parties' motions for reconsideration in turn.

## II. Discussion

### A. Legal Standard

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Instead, "the standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* D. Conn. L. R. 7(c)(1) ("[Motions for reconsideration] will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order.").

### B. Park West's Motion for Reconsideration

Park West's motion for reconsideration rests upon an explanation for the Doughtie email referenced above. (*See* ECF No. 162-1 at 1.) In particular, Park West avers that the document Doughtie referred to in her email (*see* ECF No. 88-2 at 3 (discussing a letter "delivered about 15 minutes ago" by DeSouza)) was a motion dated February 23, 2015 and filed by DeSouza in state court accusing her of committing a hit and run. (ECF No. 162-1 at 2-3.) The motion, which was filed in the ongoing housing action between Park West and DeSouza in state court, begins as follows:

> **MOTION AND RESPONSE TO FRAUD AFFIDAVIT BY PLAINTIFF'S, BILLIGERANT [sic], IRATE, MENTALLY DISTURBED STAFF: KIM DOUGHTIE**
> **[Known to Vernon Court as Psychopathic LIAR, Delusional, Deceitful, Mentally Dysfunctional w/ Susan Smith Syndrome]**
> **Here we go again and in response to FRAUD, BOGUS sworn Affidavit** by well known DECEIFUL [sic], Delusional, **well known Psychopathic LIAR to Vernon Superior Court in the name of (a.k.a. Kim Doughtie).** A manipulative LIAR, imbecilic, belligerent, deranged, volatile, mentally disturbed w/ split personalities, alcoholic, intellectually and primitively backward, combative, argumentative, inept / lack of basic intellect to the RULE of LAW and HUD Re-Certification Policies & Procedures, CRAZY, *court comical clown performer with cynical insanity, irate, Square-Peg-in-a-Round*, Park West Apartments contract staff employee; **Kim Doughtie (with satanic/EVIL symptoms of convicted murder: Ms. Susan Smith and Charles Mason Syndromes ALL Rolled into one)** with **"*RECORDED Police Arrest HISTORY*"** of series of belligerent, **invading police arrests**, emotional outbursts, breach of peace arrests, **intoxications, driving whilst intoxicated arrest(s), resisting police arrests in a hit-and-run accident** including endless lists of police arrests over the years **worse than famous Rodney King**. And who was seen by tenants of Park West Apartments tenants [sic] *slamming her own head against her own car steering wheel at traffic lights; right after her testimony 09/12/2014* and NEVER did return to work until the following week. *ONLY misfits behave this way in public*.

(ECF No. 162-2, Exhibit A ("DeSouza Motion") at 2.)[6] The remainder of DeSouza's motion is filled with similar invective. (*See id.* at 3-5.) Park West contends that Doughtie's email, dated

---

[6] Although Park West did not submit DeSouza's motion in its papers in support of its motion for summary judgment, I rely upon it in adjudicating its motion for reconsideration for the following reasons: (1) the second affidavit of non-compliance with the Stipulated Agreement, which Park West attached to its motion for summary judgment, quoted DeSouza's motion at length (*see* ECF No. 130-17, Exhibit Q at 2 ("On February 23, 201[5] Mr. DeSouza filed another notice in which he refers to Kim Doughtie as a 'mentally a [sic] disturbed sociopath, liar, delusional, deceitful, mentally [dysfunctional] with Susan Smith Syndrome and has [sic] satanic evil symptoms of convicted murde[er] Susan Smith and Charles Mason all loaded into one'")); (2) DeSouza's motion is a public record and is therefore subject to judicial notice, *see Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 301, n. 6 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012) (noting that Court could take judicial notice of application that was part of public record in adjudicating motion for summary judgment); and (3) I must take judicial notice of DeSouza's motion to avoid a manifest injustice—i.e., willfully ignoring evidence pivotal to adjudicating the merits of DeSouza's remaining claims. *See Gupta v. Attorney Gen. of U.S.*, 52 F. Supp. 3d 677, 682 (S.D.N.Y. 2014) (taking judicial notice of new evidence submitted in support of motion for reconsideration "to avoid a manifest injustice").

February 26, 2015, complaining about DeSouza constitutes a response to that motion, and that summary judgment should therefore be entered in its favor on DeSouza's remaining claims. (*See id.* at 5-6.) I agree.

Doughtie's email clearly constitutes a response to DeSouza's February 23, 2015 motion. Notably, the email states that a communique delivered by DeSouza was comprised of "untrue slander" and wrongly accused Doughtie of having taken part in a "hit and run." (ECF No. 88-2 at 3.) The email begins with the statement that DeSouza had "hand delivered" her a "letter"[7] about "15 minutes" before she sent the email. (*Id.*) DeSouza's motion—dated a mere three days earlier—averred that Doughtie took part in a "hit-and-run accident." (DeSouza Motion at 2 (internal emphases omitted).) Further, the aggrieved tone of Doughtie's email confirms that she was reacting to the vituperative laundry list of ad hominem attacks in DeSouza's motion. To be sure, this does not excuse her request for Attorney Paul to "get [DeSouza] evicted." (ECF No. 88-2 at 3.) It does, however, remove any basis for a reasonable juror to find that Doughtie's email was in any way related to DeSouza's previous HUD complaints, the last of which was filed in October 2014, some four months before her email. In addition, the March 11, 2015 affidavit itself recites that it was triggered in large part by Doughtie's reaction to DeSouza's February 23, 2015 filing, arguing that the filing breached the "courtesy" requirement of the August 29, 2014 Stipulated Agreement: "On February 23, 201[5], Mr. DeSouza filed another notice in which he refers to Kim Doughtie as a 'mentally disturbed sociopath' . . . . Any of those things are a clear violation of the agreement entered into by the parties on August 29, 2014." (ECF No. 130-17.) Since Doughtie's email was the only piece of evidence suggesting that the

---

[7] Although Doughtie used the term, "letter," the circumstances all indicate she was referring to DeSouza's motion and DeSouza does not argue otherwise.

8

March 11, 2015 affidavit of noncompliance was filed in retaliation for DeSouza's HUD complaints, I conclude that DeSouza's February 23, 2015 Housing Court filing, when read together with the email and the March 11, 2015 affidavit of noncompliance, dispels any genuine issue of material fact concerning whether Park West acted with retaliatory intent in filing that affidavit.[8]

I therefore grant Park West's motion for reconsideration.

### C. DeSouza's Motion for Reconsideration

DeSouza's motion for reconsideration consists of a litany of factual and legal assertions allegedly supported by exhibits attached to his papers. (*See* ECF No. 163; ECF No. 164.)[9] Some of these assertions merely reiterate arguments I rejected in my ruling on Park West's motion for summary judgment. (*See, e.g.*, ECF No. 163 at 8 (averring, without pointing to any new evidence, that Park West's June 2014 eviction was motivated by discriminatory intent), 9 (claiming that the audio tape recordings of the parties' recertification meeting in September 2014 demonstrates that Park West executed the Stipulation Agreement in bad faith), 14 (arguing that the housing court mediator was actually working for Park West and coerced DeSouza into agreeing to the Stipulated Agreement).) A significant portion of the remainder of DeSouza's arguments advance new factual allegations unsupported by any evidence. (*See, e.g.*, *id.* at 8 (averring that Park West has responded to white tenants' allegations in HUD complaints but not to those filed by DeSouza), 10 (claiming that Rockville Superior Court personnel provided

---

[8] DeSouza's objection to Park West's motion for reconsideration consists of a series of numbered statements, each labelled as "facts," effectively reiterating the same arguments he made in his opposition to Park West's motion for summary judgment. (*See* ECF No. 167-1 at 1-18.) His objection is entirely unresponsive to Park West's arguments in its motion for reconsideration, and in particular does not touch upon the context for Doughtie's email.

[9] Document number 164 appears to be a list of additional exhibits that DeSouza wishes to append to his original motion. (*See* ECF No. 164.)

9

protection to Park West personnel but not to him during Park West's eviction proceedings against him), 11 (contending that Park West manager Evelyn Rodriguez executed DeSouza's HUD recertification on June 16, 2015 and never asked if he was recording her), 13 (arguing that DeSouza's current hardships stem from Park West's actions).) The latter factual assertions do not help DeSouza, as a party may not "introduce additional and unsubstantiated factual assertions" in a motion for reconsideration. *See Adams v. Warner Bros. Pictures*, 289 F. App'x 456, 458 (2d Cir. 2008). DeSouza's reiterations of his previous arguments fail both for the reasons noted in my ruling on Park West's motion for summary judgment and because a motion for reconsideration is "not a vehicle for relitigating old issues, . . . securing a rehearing on the merits, or otherwise taking a second bite at the apple . . . ." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

DeSouza's motion does contain a few new legal arguments challenging my summary judgment ruling. (*See* ECF No. 163 at 4-6 (contending that DeSouza fully performed his obligations in completing the interim recertification process in early 2014 and that he had no other responsibilities with respect to the recertification process) 15 (averring that Ms. Doughtie was acting in her capacity as an employee of Park West when she allegedly accused DeSouza publicly of raping her daughter and granddaughter), 8 (arguing that the fact that Park West's communications did not mention race does not mean that they were not based upon DeSouza's race).) DeSouza does not provide any reason why these arguments could not have been provided in his objection to Park West's motion for summary judgment. That alone justifies denying his motion for reconsideration. *See United States v. Sasbon*, No. 10-CR-133 SJF, 2011 WL 867177, at *2 (E.D.N.Y. Mar. 8, 2011) (noting that "reconsideration should not be granted where the

moving party . . . advances new arguments or issues that could have been raised on the original motion").

Nonetheless, I will address DeSouza's new legal arguments. His most substantive argument is the one concerning the recertification requirements for his Section 8 subsidy in early 2014. Some portions of this argument lack any merit whatsoever. For example, DeSouza contends that he was working in Texas at the time that Park West desired to complete the recertification process and thus could not "fly back to [Connecticut] just for [a] mere face-to-face HUD Interim Recertification interview." (ECF No. 163 at 5.) This is irrelevant to the matter at hand. DeSouza also claims that the evidence in the summary judgment record demonstrates that he completed the annual recertification process on June 10, 2014, because his rent was reduced at that time. (*Id.*) He provides no basis for this argument, however, other than the bald assertion that no tenant in receipt of a HUD subsidy has ever received a rent reduction without completing an annual recertification. (*Id.* (emphasis omitted).) DeSouza also argues that he was not required to undertake any additional steps to complete the interim recertification process in early 2014. He claims in particular that the HUD interim recertification process was entirely Park West's responsibility, contrary to my conclusion in my ruling on Park West's motion for summary judgment. (*Id.* at 5-6.)

DeSouza's argument fails for several reasons. First, he fails to substantively address the basis for my conclusion that he failed to comply with the requirements of the recertification process, which was a HUD regulation DeSouza attached to his objection to Park West's motion for summary judgment requiring owners to engage in an interactive process with a tenant to complete an interim recertification. (*See* SJ Ruling at 18 (citing ECF No. 151-4, Pl.'s Ex. 15 at 45 (listing a HUD regulation requiring an owner completing an interim recertification to take

11

several steps, including interviewing the tenant, obtaining third-party verification of the new income, and obtaining the tenant's signature on the interim recertification)).) Second, DeSouza does not address my conclusion that Park West's ongoing attempts to mediate his case undercut any inference of discrimination or retaliation. (*See* SJ Ruling at 19.) Park West's ongoing attempts to mediate DeSouza's case and entrance into a Stipulated Agreement keeping him in his apartment would make little sense if it sought to use the recertification issue as a pretext to evict him. DeSouza does not point to any evidence in his motion raising a doubt on that point. Third, even if DeSouza's own reading of HUD requirements is more correct than Park West's or mine, that would still not amount to evidence of retaliatory or discriminatory intent. This case is not about whether Park West's position that DeSouza failed to comply with recertification requirements was legally correct; indeed, DeSouza settled that issue with Park West when he entered into the August 29, 2014 Stipulated Agreement. The issue here is instead whether Park West's position was so off base as to suggest retaliatory or discriminatory intent, either by itself or together with other evidence. There is no basis in the record to conclude that it was.

DeSouza's second argument concerning Doughtie's alleged false accusation that he raped her daughter and granddaughter fares little better. In my summary judgment ruling, I granted Park West's motion for summary judgment on DeSouza's common law tort claims against Park West predicated upon this incident based on DeSouza's failure to demonstrate that Park West was vicariously liable for Doughtie's alleged statements. (*See* SJ Ruling at 39.) In his motion for reconsideration, DeSouza contends that Doughtie was acting in her official capacity because she organized the party at Park West that had taken place shortly before she allegedly publicly accused DeSouza of the crimes noted above and told a police officer that she was the property manager at Park West before she made the accusation. (ECF No. 163 at 15.) But vicarious

liability under Connecticut law does not turn upon whether an employee is situated on a premises because of her job.  Rather, as I noted in my summary judgment ruling, it turns on whether the employee's actions fell within the "scope of her employment"—i.e., whether her actions furthered the interests of the employer in some manner—or were authorized by the agents of the corporation.  (*See* SJ Ruling at 39 (internal quotation marks omitted).)  Even if I credited DeSouza's assertion that Doughtie uttered the statements in question while presiding over a Park West function, it would not fall within either of these categories.  DeSouza fails to present a scintilla of evidence that Doughtie's alleged false accusations were authorized by Park West or would in any way benefit it.  I therefore reject DeSouza's motion for reconsideration on this point.

Finally, DeSouza contends that the fact that none of Park West's communications included in the summary judgment record mentioned race is not dispositive given that his race was "self-evident."  (ECF No. 163 at 1.)  I concluded in my summary judgment ruling that DeSouza's racial discrimination claims failed in part due to the fact that none of the communications DeSouza highlighted mentioned race.  (*See* SJ Ruling at 17.)  My conclusion also rested on the basis, however, that DeSouza did not "contend nor [did] the record reflect that any of the remarks . . . or their context implicitly reference race in any manner." (SJ Ruling at 17.)  Thus, the only evidence DeSouza presented in favor of his racial discrimination claim was "that he subjectively construed [Park West's management's] admittedly hostile remarks . . . as evidence of racial animus on the part of Park West." (*Id.* at 17-18.)  As I noted in my ruling, such subjective evidence is not enough to support an inference of discrimination.  (*Id.* at 18 (citing *Pearson v. Bd. of Educ.*, 499 F. Supp. 2d 575, 593 (S.D.N.Y. 2007) (employee's racially neutral insults toward plaintiff could not be construed as "race-based remarks" despite plaintiff's

subjective interpretation of them); *Rajaravivarma v. Bd. of Trustees for Connecticut State Univ. Sys.*, 862 F. Supp. 2d 127, 152 (D. Conn. 2012) (reaching similar conclusion regarding employee's insult toward plaintiff). Nor is the fact it is "self-evident" that DeSouza is African-American. DeSouza "has done little more than cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his] race. This is not sufficient." *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) (quoting *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001))).)

I therefore reject DeSouza's motion for reconsideration.

## III. Conclusion

For the reasons set forth above, Park West's motion for reconsideration (ECF No. 162) is GRANTED and DeSouza's motion for reconsideration (ECF No. 163; ECF No. 164) is DENIED. I therefore conclude that Park West is entitled to summary judgment on the remaining portions of DeSouza's retaliation claims under the FHA (Counts 1, 2, 3, and 6). The Clerk is instructed to close this case.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

October 11, 2018